UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT R.,<br>    Plaintiff<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>    Defendant. | Case No. 5:18-cv-00196-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.    PROCEDURAL HISTORY

Plaintiff[1] filed a complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11, 12] and briefs addressing disputed issues in the case [Dkt. 17 ("Pltf.'s Br.") and Dkt. 18 ("Def.'s Br.")]. The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that this matter should be remanded for further proceedings.

---

[1]   Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On August 11, 2014, Plaintiff filed an application for DIB, alleging disability beginning January 1, 2009. [Dkt. 17, Administrative Record ("AR") 59, 138-139.] Plaintiff subsequently amended his alleged onset date to May 28, 2014. [AR 15.] The Commissioner denied his initial claim for benefits on October 3, 2014. [AR 70-73.] On March 14, 2017, a hearing was held before Administrative Law Judge ("ALJ") T. Patrick Hannon. [AR 29-49.] On May 8, 2017, the ALJ issued a decision denying Plaintiff's request for benefits. [AR 15-21.] Plaintiff requested review from the Appeals Council, which denied review on December 5, 2017. [AR 1-5.]

The ALJ evaluated Plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step sequential evaluation process. As an initial matter, the ALJ determined that Plaintiff acquired sufficient quarters of coverage to remain insured through September 30, 2014. [AR 16.] Therefore, Plaintiff was required to establish disability on or before that date to recover disability insurance benefits. Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity from May 28, 2014, the amended alleged onset date through September 30, 2014, the date last insured. [AR 18 (citing 20 C.F.R. § 416.971).] At step two, the ALJ found that Plaintiff had the following medically determinable impairments through the date last insured: osteomyelitis of the left great toe, status post amputation; remote history of partial amputation of the left first and second toes; type II diabetes mellitus; and hypertension. [*Id.* (citing 20 C.F.R. § 404.1522 *et seq*.] However, the ALJ determined that those impairments were not severe. [AR 18.] Accordingly, the ALJ did not proceed through any additional analysis of the five-step evaluation and concluded that Plaintiff has not been under a disability, as defined by the Act, through the date last insured. [AR 21.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), this Court reverses only if the Commissioner's "decision was not supported by substantial evidence in the record as a whole or if the [Commissioner] applied the wrong legal standard." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "must be 'more than a mere scintilla,' but may be less than a preponderance." *Id.* at 1110-11; *see Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotations omitted). This Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (quoting *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996)). If "the evidence is susceptible to more than one rational interpretation, we must uphold the [Commissioner's] findings if they are supported by inferences reasonably drawn from the record." *Molina,* 674 F.3d at 1111.

### DISCUSSION

In his sole issue, Plaintiff contends that the ALJ erred at step two of the sequential evaluation by finding that he did not suffer from any severe impairment prior to his date last insured. The Court agrees and finds that remand is appropriate.

**A. Applicable Law**

At step two of the sequential evaluation, the ALJ determines whether the claimant has a medically "severe" impairment or combination of impairments. *See* 20 C.F.R. §§ 404.1520(a)(4) (ii); *see also Smolen*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 140–41 (1987)). An impairment is severe when it significantly limits a claimant's "physical or mental ability to do basic work activities" and lasted or is expected to last "for a continuous period of at least 12 months." *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), (c), 404.1521(a); *accord* 20 C.F.R. §§ 416.920(a)(4)(ii), (c), 416.909. Basic work activities means "the

abilities and aptitudes necessary to do most jobs," including: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. However, the regulation must not be used to prematurely disqualify a claimant. *Id.* at 158 (O'Connor, J., concurring). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Smolen*, 80 F.3d at 1290 (internal quotation marks and citation omitted). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28); *cf Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to satisfy the step two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results"). "Step two, then, is 'a *de minimis* screening device [used] to dispose of groundless claims[.]'" *Webb*, 433 F.3d at 687 (quoting *Smolen*, 80 F.3d at 1290); *see also Edlund v. Massanari*, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "*de minimis* standard"); *Tomasek v. Astrue*, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb.11, 2008) (describing claimant's burden at step two as "low").

### B. The Medical Evidence Through the Date Last Insured

The medical evidence demonstrated that on May 29, 2014, during the insured period, Plaintiff sought emergency room care for pain and swelling in his left great toe. [AR 20, 278, 289.] Plaintiff presented with an abscess accompanied with a fever and he mentioned "that he had been that way for several weeks." [AR 283.] When asked about the nature of his injury, Plaintiff, a truck driver, was adamant that his toe injury related to "using a manual transmission at work." [AR 278.] Plaintiff denied a prior history of swelling and he denied that he was diabetic "although both of his parents were diabetic." [AR 20, 289.] He described his toe as "uncomfortable, but not terribly tender." [AR 289.] The emergency room physician noted that Plaintiff had a [prior] partial amputation of [his] left 1st and 2nd toes [stemming from an] industrial accident 10+ years ago." [AR 289.]

Upon examination, Plaintiff had swelling and cellulitis in the left great toe and laboratory testing revealed elevated glucose levels. [AR 20, 279-80.] Plaintiff was diagnosed with "new onset diabetes and [a] diabetic foot infection" in the left great toe. [AR 299.] Physicians also noted that continued "diabetic education will be important in gaining the patient's trust [as] he has pride in never needing doctors." [AR 288.] Plaintiff remained hospitalized and on June 1, 2014, three days after he was admitted, a vascular surgeon amputated Plaintiff's left toe. [AR 305.] Plaintiff tolerated the procedure well without any complications. [AR 305.]

For three weeks following his left great toe amputation, Plaintiff remained in the hospital until June 25, 2014 "because he had an acute respiratory failure" and "acute kidney failure." [AR 276.] Upon discharge, Plaintiff's attending physician recommended that Plaintiff be released to a skilled nursing facility because he needed continued physical therapy, wound care, and IV antibiotics. [AR 277.][2]

---

[2] The ALJ acknowledged Plaintiff's referral to a skilled nursing facility but noted that "the record does not include treatment notes from such a facility." [AR 20.]

Plaintiff was also advised to follow up with a "specialist, the nephrologist, and [an] endocrinologist for the infection, kidney failure, and uncontrolled diabetes type 2." [AR 277.]

On August 26, 2014, Plaintiff met with James Rupert, M.D. and requested refills of his medication. The ALJ noted that upon examination, Plaintiff's blood pressure was 160 over 80. Testing after the visit revealed a normal glucose level of 81, but an elevated HgA1c1 level of 7.5. [AR 464-465.] Plaintiff followed up with Dr. Rupert on September 10, 2014, shortly before the date last insured. During that appointment, Plaintiff had an elevated blood pressure of 187 over 96, but a foot examination revealed normal findings. [AR 462.]

### C. The ALJ's Opinion

In assessing the severity of Plaintiff's medically determinable impairments at step two, the ALJ found the Plaintiff did not suffer from a severe physical or medical impairment. [AR 20.] The ALJ noted that:

> The claimant's longitudinal medical history, based on available medical evidence, does not support the claimant's allegations about the severity of his symptom and limitations through the date last insured. The record does not include evidence of treatment for type II diabetes mellitus or hypertension until late May 2014, at which time the claimant sought emergency room care for pain and swelling in the left great toe that had started two months ago and had been worsening. He denied a prior history of these symptoms and asserted that he was not a known diabetic. An examination revealed swelling and cellulitis in the left great toe and up to the mid foot, and laboratory testing indicated an elevated glucose level of 342 and an elevated HgA1c1 level of 10.4.

[AR 20.]

The ALJ further noted that:

> Based upon a full review of the record, the undersigned finds that the claimant's osteomyelitis of the left great toe, status post amputation; remote history of partial amputation of the left first and second toes;

> type II diabetes mellitus; and hypertension did not cause limitations or restrictions that more than minimally affected his ability to perform basic work activities. The undersigned therefore finds that the impairments were not severe during the period from the amended alleged onset date of May 28, 2014, through the date last insured of September 30, 2014.
>
> In making this finding, the undersigned has considered the determination of the State agency's medical consultants that the record has insufficient evidence the make any findings related to the claimant's physical impairments. However, the undersigned gives little weight to this determination because the evidence received at the hearing level, as discussed above, shows that the claimant received treatment related to osteomyelitis of the left great toe, type II diabetes mellitus, and hypertension prior to the date last insured.

[AR 20.]

### D. Analysis

Here, the ALJ's finding that Plaintiff did not have a "severe" impairment is not clearly established by the medical evidence. While the ALJ stated that there was insufficient medical evidence demonstrating that Plaintiff's medically determinable impairments "more than minimally affected [Plaintiff's] ability to perform basic work activities during the insured period," the record does not support this finding. *See Webb*, 433 F.3d at 687 ("Although the medical record paints an incomplete picture of Webb's overall health during the relevant period, it includes evidence of problems sufficient to pass the *de minimis* threshold of step two.").

In discounting Plaintiff's impairments, the ALJ took issue with Plaintiff's failure to seek "treatment for type II diabetes mellitus or hypertension until late May 2014." AR 20. However, the record demonstrates that Plaintiff's failure to seek treatment was related more closely to his attitude about physicians and his denial about his symptoms rather than his medical need to seek treatment. Indeed, Plaintiff waited for almost two months as his toe swelled and his infection worsened. Upon admission to the hospital he erroneously denied being diabetic and he was

convinced that his injury was related to his truck driving rather than his serious diabetic condition and subsequent kidney failure. Despite Plaintiff's personal opinions about his medical needs, testing and examinations revealed severe cellulitis, osteomyelitis, hypertension, and type II diabetes which resulted in a partial foot amputation, a month-long hospital stay, and continued treatment at a skilled nursing facility. Therefore, the Court cannot say that Plaintiff's prior lack of medical treatment should be credited over glaring medical evidence demonstrating that Plaintiff's impairments more than minimally affected his ability to do basic work activities. *See Ortiz v. Commissioner of Social Sec.*, 425 Fed. Appx. 653, 655 (9th Cir. 2011) (unpublished) ("This is not the total absence of objective evidence of severe medical impairment that would permit us to affirm a finding of no disability at step two.").

The ALJ also noted that in finding that Plaintiff lacks a severe impairment he considered the determination of the State agency's medical consultants that "the record has insufficient evidence to make any findings related to the claimant's physical impairments." AR 21. This, however, mischaracterizes the opinion given by the State agency physicians. Although the State agency physicians found that there was "insufficient evidence to evaluate [Plaintiff's] claim," both State agency physicians found several of Plaintiff's medically determinable impairments severe. [AR 57, AR 56 (listing Plaintiff's amputations and chronic heart failure as severe); AR 65 (listing Plaintiff's amputations, CHF, diabetes mellitus, cerebrovascular disease, and peripheral neuropathy as severe."]

In arguing that Plaintiff's physical impairments were "non-severe," Defendant argues that the ALJ rightfully rejected the 2016 opinion of consultative examiner Bahaa Girgis, M.D. as after the date last insured.[3] According to Defendant, "the

---

[3] The ALJ did not specifically address Dr. Girgis's examining opinion; instead the ALJ stated: "the undersigned notes that the record includes statements from the claimant, medical evidence, and opinion evidence dated after the date last insured. However, the undersigned has

8

ALJ properly gave no weight to Dr. Girgis's opinion as Dr. Girgis did not even examine Plaintiff until over two years after Plaintiff's date last insured." [Dkt. 18 at 6]. The Court, however, need not devote attention to the consultative examination of Dr. Girgis. The issue here is not, strictly speaking, whether Dr. Girgis's conclusions were relevant to Plaintiff's insured period because the Court has already determined that there was sufficient evidence during the insured period supporting a finding of severe physical impairments at step two.

Finally, it cannot be said that the ALJ's error here was harmless. *See Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("We recognize harmless error applies in the Social Security context."). Because the ALJ erroneously found that Plaintiff's impairments were not severe, the ALJ did not proceed beyond the *de minimis* threshold of step two and consequently failed to adequately discuss those impairments later in the sequential evaluation. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (any step two error was harmless where "ALJ extensively discussed" condition "at Step 4 of the analysis"). Accordingly, for the reasons stated above, the Court finds that Plaintiff is entitled to summary judgment on the claim that the ALJ erred at step two of the sequential evaluation by finding that Plaintiff's medical determinable impairments were non-severe.

## V. CONCLUSION AND ORDER

The decision of whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding

---

not considered such evidence in the disability determination, as it does not relate to the claimant's symptoms and functioning during the relevant time period. [AR 21.]

9

issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

The Court finds that remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, "except in rare circumstances"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved"); *Harman*, 211 F.3d at 1180-81. The Court has found that, with respect to Plaintiff's medically determinable impairments, the ALJ erred at step two of the sequential evaluation process. Thus, remand is appropriate to allow the Commissioner to continue the sequential evaluation process starting at step three.

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is REVERSED and this matter REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: February 11, 2019

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE